**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **vs** | § | **CRIMINAL NO. 24-cr-371-SSS** |
| | § | |
| **CURTIS HOLLIDAY (21)** | § | |

**UNITED STATES' RESPONSE TO DEFENDANT'S DISCOVERY MOTION (DOCKET ENTRY NO. 2726)**

COMES NOW the United States Attorney for the Southern District of Texas, by and through Michael Day and Stephanie Bauman, Assistant United States Attorneys, and files this Response to the Defendant Curtis Holliday's Motion for Discovery (Dkt. No. 2726) filed on November 19, 2026, and respectfully would show unto the Court as follows:

## I. Background

Mr. Holliday was originally charged by Indictment on July 24, 2024. *See* Dkt. No. 1. The original Indictment named 52 defendants in 11 separate wire fraud conspiracies involving 11 different bail bonds that the United States alleged had been fraudulently obtained.

A Third Superseding Indictment was subsequently filed on March 26, 2026. *See* Dkt No. 2320. The Third Superseding Indictment named 7 defendants in 5 separate wire fraud conspiracies involving 5 different bail bonds that the United States alleged had been fraudulent obtained.

In the Third Superseding Indictment, Mr. Holliday is charged in Count 6 with conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1343, 1349. The bail bond at issue in the alleged conspiracy was Mr. Holliday's own bail bond. He is set for jury trial on November 16, 2026.

Most discovery in this case (over 1.1 TB) has been disseminated through a coordinating discovery attorney, Russ Aoki. *See* Dkt. No. 511. Throughout 2026, as the remaining defendants

in the case have approached various jury trial settings, supplemental discovery productions have been made directly by the United States Attorney's Office to defense counsel.

## II. The Government's Discovery Obligations

The Government recognizes its obligations under Federal Rule of Criminal Procedure 16, the Due Process Clause of the Fifth Amendment, *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), *Kyles v. Whitley*, 514 U.S. 419 (1995), the Jencks Act, 18 U.S.C. § 3500, Federal Rule of Criminal Procedure 26.2, and the Court's Rule 5(f) Order. The Government has complied with those obligations and will continue to do so. The Government also recognizes that these obligations are continuing and extend to favorable information known to others acting on the government's behalf in this case. *Kyles*, 514 U.S. at 437.

As a matter of practice, the Government seeks to go above and beyond its discovery obligations to provide as much transparency as possible and as a courtesy to defense counsel. It is important to note, however, that the Government's discovery obligations have limits. There is no general Constitutional right to discovery in a criminal case. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Rule 16 reaches only the enumerated categories of material within the government's "possession, custody, or control." Fed. R. Crim. P. 16(a)(1)(E). "Material to preparing the defense" means material that helps the defendant respond to the Government's case-in-chief. *United States v. Armstrong*, 517 U.S. 456, 462 (1996). Rule 16(a)(2) exempts from discovery reports, memoranda, and other internal government documents made by government agents in connection with the investigation, except as provided by the Jencks Act and Rule 26.2. And *Brady* is a rule of disclosure, not a mandate that the government investigate for the defense or gather evidence the defendant can obtain himself. It has also been stated that, "*Brady* is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation." *United States v. Beasley,* 576 F.2d 626, 630 (5th Cir.1978), *cert. denied,* 440 U.S. 947, 99 S. Ct. 1426, 59 L.Ed.2d 636 (1979). Rule 16, of

course, explicitly requires *pretrial* discovery and production of the material described in the rule, while *Brady,* because it is not a discovery rule, contains no such timing requirements. *United States v. Harris,* 458 F.2d 670 (5th Cir.).

## III. Response to Defense Motion for Discovery

### *A. Impeachment & Jencks Material*

Mr. Holliday has asked for grand jury transcripts of witnesses the Government intends to call at trial (Category #1) and all promises, agreement, benefits, and payments made or offered to prospective Government witnesses (Category #4).

The Government acknowledges that *Giglio* material must be disclosed in time for the defense to make effective use of it at trial. The Fifth Circuit generally examines whether disclosure was made in time for effective use. *See United States v. O'Keefe*, 128 F.3d 885, 898 (5th Cir. 1997) (finding that reports turned over during witness's direct examination and at beginning of cross-examination were able to be used effectively by defense in "devastating cross-examination").

The Government has attempted to exceed its obligations when possible and therefore proposes to adhere to the following schedule:

- By Monday, November 30, 2026, the government will produce grand jury testimony of any witness it expects to call at trial.
- By Wednesday, December 2, 2026, the government will produce all other Jencks Act and Rule 26.2 material for its expected witnesses, including prior statements and interview reports, to the extent they qualify as statements under 18 U.S.C. § 3500(e). Due to ongoing preparation, some Jencks Act and Rule 26.2 material may be disclosed after this date.

- By Friday, December 4, 2026, the government will produce plea agreements, cooperation agreements, and any benefit or payment information for each cooperating witness it expects to call.

The Government will disclose any *Brady* material that comes to light before or after those dates, including information that arises from further witness preparation. Because some potential witnesses have been interviewed recently and witness preparation will remain ongoing up to and until the time of trial, the Government acknowledges that new information may arise after the dates specified above. The Government fully intends to make timely disclosures as required.

Early production of Jencks material is voluntary, and the Court cannot compel it. *See* 18 U.S.C. § 3500(a); *United States v. Campagnuolo*, 592 F.2d 852, 859 n.3 (5th Cir. 1979). The proposed schedule is a courtesy and does not waive the statutory limits. The Court should deny Defendant's request for an order that goes further.

*B. Internal Investigation by FCS*

Mr. Holliday has requested the internal investigation conducted by Financial Casualty & Surety (FCS), delivered to the Government as early as 2022, and related correspondence with the Government over the last four years (Category #2). Mr. Holliday also states that his counsel first learned of the investigation during an interview of FCS's outside counsel, Ken Good, in November 2026. *See* Dkt. No. 2726 at 5. He suggests that the Government never disclosed the existence of the investigation in discovery. *See id.* at 8.

For context, the Government clarifies that the existence of the investigation was disclosed. That FCS conducted an investigation in 2022 was the subject of FBI reports dated September 8, 2022, and September 23, 2025.[1] The scope of the investigation included, in part, scrutiny of the

[1] Mr. Good also referenced the investigation during his testimony at the related bench trial on October 1, 2025. *See, e.g.,* Dkt. No. 1546 at 61:20-22, 62:6-25, 66:22-69:1.

indemnitors on Mr. Holliday's bond and the use of fraudulent indemnitor information more broadly at AABLE.[2] As depicted below, the 2025 report noted that Mr. Good had recorded interviews of AABLE employees during the investigation and had turned over the recordings to one of the investigators, FBI TFO Anthony Turner.

> August 16, 2022 Affidavit of Surrender filed in Cause No. 1662014; State v. Holliday; In the 178th Judicial District Court of Harris County, Texas Week ofAugust 22, 2022 Reached out to and interviewed numerous employees of Aable Bail Bonds. I made a summary of the employees whom I spoke with. My client also reached out and had recorded conversations with certain employees. The summary of my interviews and the recorded statements were provided to you via email on 8/29/2022. I spoke to Mary Brown, Tonya Brooks, Krissy Moreno and Taneka Cole. We also obtained recorded conversations with Krissy Moreno, Tameka Cole and a recording of Oscar speaking to representative of US Fire obtained by Tameka Cole.

Mr. Holliday's counsel stated at the pretrial conference on November 9, 2026, that he was not sure if the recordings of Mr. Good's interviews, which he received from Mr. Good, had been included in the discovery of the case. The Government promptly followed up on counsel's comments by having TFO Turner search his email accounts for all emails with both representatives from FCS, Lisa Thompson and Ken Good. All emails and attachments found during that search were then made available to Mr. Holliday's counsel on November 16, 2026. Two days later, the same process was repeated for FBI Special Agent Adam Hassan, and those emails were made available on November 19, 2026. The Government has now provided to Mr. Holliday what it has in its possession from FCS, including the requested materials regarding the 2022 investigation.

Mr. Holliday suggests that any materials the government has not obtained from FCS, but could obtain from FCS "on request," are "arguably" within the Government's "'control'" for purposes of Rule 16. *See* Dkt. No. 2677, at 15. Respectfully, this is not the law, regardless of FCS's status in the case.

[2] FCS's investigation was not limited to these topics, however. It included allegations of other types of fraudulent or illegal conduct by AABLE's owner and certain employees of AABLE.

*Brady* does not require the Government to obtain evidence from third parties for the defense. *Brady* is a disclosure rule. It does not require the Government to gather evidence from private parties or to conduct the defense's investigation. *See United States v. Skilling*, 554 F.3d 529, 576 (5th Cir. 2009). Where the information is equally available to the defense, including from entities the defense has dealt with directly, the government has no duty to obtain it. *See also United States v. Runyan*, 290 F.3d 223, 245 (5th Cir.2002). "The government is not required ... to facilitate the compilation of exculpatory material that, with some industry, defense counsel could marshal on their own." *Id.*at 246. "When evidence is equally available to both the defense and the prosecution, the defendant must bear the responsibility of failing to conduct a diligent investigation." *United States v. Brown,* 628 F.2d 471, 473 (5th Cir.1980).

Mr. Holliday is well aware of the role that FCS played in this case. Mr. Holliday was a signatory to his own bond paperwork and to a Security Agreement[3] required by FCS for its protection. He, his ex-wife, and his business partner had dealings directly with representatives of FCS during the course of the negotiation of the bond and afterward.

The proper vehicle for third-party records is Fed. R. Crim. P. 17(c). A defendant who wants records held by a private party may seek a subpoena under that rule.

*C. Agents' Notes*

Mr. Holliday's requests "agent's notes—contemporaneous or otherwise—of interviews" (Category #5). The Government does not oppose this request on an ongoing basis, and case agents are aware of the need to maintain and memorialize their notes. Additionally, the Government has fully complied with this request for all witness interviews conducted since February 2026, to the

[3] Government Exhibit 302B.

extent any handwritten notes were taken during the interview.[4] Finally, several sets of notes for interviews conducted before February 2026 were scanned and saved within FBI's Sentinel case management and records system, such that they have already been provided to Mr. Holliday during the normal course of discovery production.

Mr. Holliday has not specified if his request is limited to future reports or if it extends to *all* historical reports in this case. If the latter is true, the United States maintains that such a broad request is neither practical at this time, nor has Mr. Holliday shown how it is material to the preparation of his defense. The investigation of this matter spanned years and swept more broadly than the one conspiracy for which Mr. Holliday is charged and will stand trial. As a result, the case file includes hundreds of reports, not all of which are pertinent to the scheme to bond out Mr. Holliday. If Mr. Holliday has a more targeted request regarding historical reports, the United States is amenable to working with him on that request. Further, as noted above, the discovery to date incorporated several sets of digitized handwritten notes. Thus, Mr. Holliday may already have access to the notes which he seeks.

*D. Oscar Wattell's Cell Phone*

Mr. Holliday requests data downloaded from Oscar Wattell's cell phone, or access to the cell phone (Category #5).

Mr. Wattell is a co-defendant in this case who is pending sentencing. As documented in a contemporaneous report, he had a cell phone on him when he was arrested in July 2024. He requested that agents take possession of that cell phone when he went into custody.

[4] The case agent who attended the interview of Oscar Wattell in early November 2026 did not take handwritten notes.

When Mr. Holliday first asked about Mr. Wattell's cell phone on November 18, 2026, the Government did not know if the cell phone had been returned. The Government has since confirmed that the cell phone is still in its possession.

Regardless of the current location of the cell phone, the Government never sought a warrant to search the contents of that device. Rule 16(a)(1)(E) obligations are triggered by what is in the Government's "possession, custody, or control." In the context of cell phones, mere possession of the device itself is not equivalent to "possession, custody, or control" of all information contained within the device. *See generally United States v. Triplett*, 2025 WL 135953, at *8 (S.D. Ohio May 9, 2025) (noting that certain data from the defendant's own phone, for which the government had obtained a search warrant, was not within the "possession, custody, or control" of the government for purposes of Rule 16 to the extent the data was encrypted and could not be accessed by the government). Put simply, the Government does not have "possession, custody, or control" of any *data* from Mr. Wattell's device to disclose to Mr. Holliday pursuant to Rule 16. That fact remains true whether the cell phone is still in Government custody or whether it had been returned to Mr. Wattell.

Regarding Mr. Holliday's request for access to Mr. Wattell's cell phone, the United States has no authority to turn over personal property obtained from one defendant to another defendant. The United States took possession of the cell phone initially at the request of Mr. Wattell, and Mr. Wattell's property interests and privacy rights are implicated by Mr. Holliday's motion.

*E. Recordings of Oscar Wattell – Darius Metoyer Phone Call*

Mr. Holliday requests the entire recording of a phone call between Oscar Wattell and Darius Metoyer and all reports and chain of custody documentation relating to the call (Category # 6). The Government fully responded to this request on the same day it was received. The Government informed Mr. Holliday that it was aware of four audio recordings, all of which were

obtained from Mary Brown's cell phone. Although Mr. Holliday himself has equal access to the forensic image of the cell phone,[5] the Government extracted the four recordings and separately provided them to defense on November 18, 2026, to facilitate access to and use of the recordings.

## IV. Conclusion

The government recognizes its continuing obligations under Rule 16, the Due Process Clause, *Brady*, *Giglio*, the Jencks Act, Rule 26.2, and the Court's Rule 5(f) Order, and it will meet them. The Court should deny the motion as moot to the extent the government has produced the requested materials in its possession. The Court should deny the motion to the extent it seeks materials not in the Government's possession, custody, or control, seeks the private property of third parties, or seeks disclosure sooner than the schedule the Government has proposed. The Court should also decline to enter an order that varies from the statutory and rule-based scope of the Government's obligations.

Respectfully submitted,

Aaron F. Reitz
UNITED STATES ATTORNEY

/s/ Stephanie Bauman
Michael Day
Stephanie Bauman
Assistant United States Attorney
(713) 567-9378

[5] Mary Brown's cell phone was seized during a video-recorded interview on March 30, 2023. Investigators later obtained a federal search warrant for the cell phone. The recording of the interview, the federal search warrant, and the forensic image of the cell phone were all included in the 1.1 TB of discovery made available to all defendants through Mr. Aoki.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 23rd day of November 2026, I electronically filed this document with the Clerk of Court using CM/ECF, and notice was sent via e-mail to counsel for the Defendants.

*/s/ Stephanie Bauman*
Stephanie Bauman
Assistant United States Attorney